**H. B. ZACHRY COMPANY, San Antonio, TEXAS,**

v.

**The UNITED STATES.**

No. 435–70.

United States Court of Claims.

Jan. 18, 1973.

O. D. Hite, San Antonio, Tex., for plaintiff. Robert J. Bird, Washington, D. C., and Chester H. Johnson, San Antonio, Tex., attorneys of record. Paul S. Richter and Bird & Tansill, Washington, D. C., of counsel.

Allan C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for the United States. Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

**COWEN, Chief Judge:**

This tax case raises issues which apparently have not been decided by any court and comes before us on cross-motions for summary judgment. It involves the interrelation that occurs between the investment credit provisions [1] and the readjustment of income provisions [2] of the Internal Revenue Code of 1954, when there is a redetermination of a subcontract price.

The essential facts are stipulated. Plaintiff was the prime contractor on a Government contract for the construction of a missile site in the Marshall Islands. Plaintiff subcontracted a portion of the project to other companies. There was a renegotiation and adjustment of the prime contract price. This resulted in a further redetermination and adjustment of the subcontracts. Pursuant to these redeterminations, plaintiff received repayments (rebates) from the subcontractors for work accomplished in prior years (1960, 1961, and 1962). For the purposes of this case, it is agreed that the repayment year was 1963. The payments originally made to the subcontractors were expensed by plaintiff in the corresponding prior years. Before the recomputation and repayment for the prior years, the plaintiff had a 1963 net operating loss, *ergo*, no taxable income or tax liability for that taxable year.

Pursuant to Code Section 1482,[3] the Internal Revenue Service made a recom-

---

1. Specifically, Int.Rev.Code of 1954, §§ 38 and 46.

2. Specifically, Int.Rev.Code of 1954, § 1482.

3. § 1482. Readjustment for repayments made pursuant to price redeterminations.

   "(a) *General Rule.*—If, pursuant to a price redetermination provision in a subcontract to which this section applies, a repayment with respect to an amount paid under the subcontract is made by one party to the subcontract (hereinafter referred to as the 'payor') to another party to the subcontract (hereinafter referred to as the 'payee'), then—

   "(1) the tax of the payor for prior taxable years shall be recomputed as if the amount received or accrued by him with respect to which the repayment is made did not include an amount equal to the amount of the repayment, and

   "(2) the tax of the payee for prior taxable years shall be recomputed as if the amount paid or incurred by him with respect to which the repayment is made did not include an amount equal to the amount of the repayment.

   "(b) *Subcontracts to Which Section Applies.*—Subsection (a) shall apply only to a subcontract which is subject to renegotiation under the applicable Federal renegotiation act.

   "(c) *Limitation.*—Subsection (a) shall not apply to any repayment to the extent that section 1481 applies to the amount repaid.

   "(d) *Treatment in Year of Repayment.* —The amount of any repayment to which subsection (a) applies shall not be taken

putation of plaintiff's taxes for the years 1960, 1961, and 1962. This was done because of the increase in plaintiff's income for those years as a result of the repayments by the subcontractors. In the recomputations, the Service determined a tax deficiency of $202,983.-03, which was paid by plaintiff. Under the pertinent investment credit provisions of the Internal Revenue Code, Sections 38 and 46, plaintiff had earned investment credits amounting to $89,-340.81 in 1962 and $135,926.64 in 1963. The investment credit was not available prior to 1962. In its section 1482 recomputation of plaintiff's taxes for 1960, 1961, and 1962, the Internal Revenue Service disallowed any investment credit for either 1962 or 1963.

Plaintiff filed a timely claim for refund in which it asserted that it was entitled to an investment credit in the recomputation of the tax for 1962 and was also entitled to deduct the investment credit for 1963 from the total amount of the recomputed deficiency due for the three years 1960, 1961, and 1962.

Since the suit was filed, the Government has conceded that plaintiff was entitled to apply the available investment credit in 1962 to the recomputed tax for that year. Defendant, therefore, agrees that plaintiff is entitled to a refund of $30,662.45. However, the Government does not agree that plaintiff is entitled to apply any portion of the investment credit for 1963 in reduction of the recomputed taxes for 1960, 1961, and 1962. This is the question we are now called upon to decide.

### The Section 1482 Recomputation

Essentially, section 1482(a) calls for a recomputation of the prior years' taxes as if the subcontracts had been correctly priced when originally signed. Once a qualified renegotiation[4] has occurred and repayment is made, a taxpayer must recompute a prior year's tax in order to determine the amount to be paid in the repayment year. One must start again with gross income, subtract deductions, arrive at taxable income, compute the gross tax, apply any applicable credits, and finally arrive at the net tax as recomputed. This computation is all accomplished without regard to "an amount equal to the repayment." This is to say the recomputation is made as if the original contract price never existed and substituted therefor are the correct payments of income and correct deductions as established by the price redetermination. In the instant case, plaintiff, the payee, received rebates from the subcontractors. These greatly reduced the previous charges to expense, and therefore increased Zachry's prior years' profits and taxes.

After recomputation of the prior years' tax, one subtracts the amount of tax originally paid from the recomputed tax. This results in an underpayment or overpayment of tax for that year as recomputed.

### Plaintiff's Contention

In arguing that it is entitled to apply the maximum available investment credit for the year 1963 against the aggregate recomputed tax liabilities of 1960, 1961, and 1962, plaintiff relies upon the provisions of sections 38(a), 46(a)(3) [5]

into account by the payor or payee for the taxable year in which the repayment is made; but any overpayment or underpayment of tax resulting from the application of subsection (a) shall be treated as if it were an overpayment or underpayment for the taxable year in which the repayment is made."

4. Generally under § 1482(b), this means a renegotiation pursuant to authority in specific renegotiation acts.

5. Internal Revenue Code of 1954:

"§ 38 [as added by Sec. 2(a), Revenue Act of 1962, P.L. 87–834, 76 Stat. 960] *Investment in certain depreciable property*

"(a) General rule.—There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part.

\* \* \* \* \*

"§ 46 [as added by Sec. 2(b), Revenue Act of 1962, *supra*, and amended by Sec. 3(b), Act of November 8, 1966, P.L. 89–800, 80 Stat. 1508] *Amount of credit*

and the last clause in section 1482(d). Thus, plaintiff argues that since the last clause in section 1482(d) provides that any underpayment of tax for the recomputed years shall be "treated as if it were an * * * underpayment" in 1963, the "as if" underpayment is a "tax imposed by this chapter",[6] as provided in section 38(a) and also "a tax for the taxable year" 1963 within the meaning of section 46(a)(3).

If we were to hold that plaintiff is entitled to apply the 1963 investment credit against the total of the recomputed taxes for the years 1960–1962, it is apparent that two results would follow: (1) the taxpayer would be allowed to apply the investment credit of 1963 against taxes for the years 1960 and 1961—years prior to the enactment of the investment credit provisions; and (2) the recomputed tax for 1962, which is to be reduced by the investment credit for that year, would be further reduced by applying the investment credit of 1963. Thus, the taxpayer would obtain benefits which would not have been available to it had the subcontracts been correctly priced in the beginning. Also, the taxpayer's method would circumvent the provisions of section 46(a), which limit the amount of investment credit that can be applied against the tax for the taxable year involved. Furthermore, the adoption of plaintiff's position would require a holding that section 1482 imposes two taxes—one for the prior years as recomputed and another for the year of repayment. We are convinced that such a result would be contrary to the language of the applicable statutes and the intention of Congress as shown by the legislative history of section 1482.

A careful reading of section 1482 demonstrates that the "as if" underpayment of the tax is not a true underpayment in the year of repayment. This is so, because the statute provides that when there are repayments under a subcontract following a price redetermination, the resulting underpayment of tax is to be computed on the basis of the tax accounting for the years to which the repayments under the subcontract are attributable. Moreover, section 1482(d) expressly declares:

> The amount of any repayment to which subsection (a) applies shall *not* be taken into account by the payor or payee for the taxable year in which the repayment is made; * * *. [Emphasis added.]

Clearly, this means that in computing his tax liability for the year in which the repayment is made, the taxpayer shall not include the amount of the repayment. The legislative history shows that the purpose of this provision was to eliminate distortions and duplicate benefits in the year of repayment.[7]

---

"(a) *Determination of amount.*—

"(1) *General rule.*—The amount of the credit allowed by section 38 for the taxable year shall be equal to 7 percent of the qualified investment (as defined in subsection (c)).

"(2) *Limitation based on amount of tax.*—Notwithstanding paragraph (1), the credit allowed by section 38 for the taxable year shall not exceed—

"(A) so much of the liability for tax for the taxable year as does not exceed $25,000, plus

"(B) * * * 25 percent of so much of the liability for tax for the taxable year as exceeds $25,000

\*     \*     \*     \*     \*

"(3) *Liability for tax.*—For purposes of paragraph (2), the liability for tax for the taxable year shall be the tax imposed by this chapter for such year, reduced by the sum of the credits allowable under—"

\*     \*     \*     \*     \*

6. Sections 38 and 46 are in chapter 1, and Sec. 1482 is in chapter 4 of the Internal Revenue Code of 1954.

7. In the technical explanation we find the following:

"In the event of a change in tax rates between the year in which an amount was originally paid and the year in which that amount or a portion thereof is repaid pursuant to price redetermination, *distortion* of the income of both the subcontractor and the prime contractor (or other subcontractor) will result. This section is designed to eliminate this distortion."

\*     \*     \*     \*     \*

"The amount of the repayment shall not be taken into account in a manner which results in *duplicate effect* upon either the

Since section 1482 forbids plaintiff from taking the rebates received from the subcontractors into account for the purpose of computing plaintiff's tax liability for the year 1963, it necessarily follows that the underpayment in tax resulting from the rebates is not a "tax for the taxable year" 1963 within the meaning of Code Sections 38 and 46. It also follows that plaintiff's investment credit for the year 1963 applies only to that tax year in accordance with the annual accounting concept and cannot be used to reduce the aggregate of the recomputed taxes for the prior years—1960, 1961, and 1962.

We have also concluded that the purpose of the last clause in section 1482(d) —the "as if" provision, upon which plaintiff relies—is to utilize the year in which the repayments are received for the purposes of assessing and collecting the recomputed tax and tolling the statute of limitations. All of this is made abundantly clear in the Senate Report on the bill which was enacted as section 1482:

> Therefore, your committee has added a new section to the chapter dealing with the recovery of excessive profits on Government contracts (ch. 4, in which sec. 1482 is added). In this provision, your committee provides that, where there is a repayment from one party to another under a subcontract subject to statutory renegotiation, the tax of the party making the repayment is to be reduced and the tax of the party receiving the repayment is to be increased for the year with respect to which the payment was originally made. The amount of the decrease and increase in tax in these two cases is to be determined by making a recomputation of tax for the prior year or years. *However, for purposes of determining*

> *when the statute of limitations expires with respect to this repayment (and also with respect to other provisions of the internal-revenue laws), this amount is to be considered an overpayment or underpayment in the year in which the repayment is made.* [Emphasis added.] S.Rep. 1983, 85th Cong., 2d Sess. (1958) (1958–3 Cum. Bull. 1006).

Section 1482 was designed to maintain the integrity of the annual accounting concept and at the same time to permit an equitable redetermination of taxes due for prior years. The prior years are reopened and the tax is recomputed in accordance with the repayments made with respect to such prior years. However, since the statute of limitations might otherwise prevent the reopening of the prior years, section 1482(d) provides that an underpayment of the tax as recomputed is treated as if it were an underpayment for the year in which the rebate or repayment under a subcontract is made. Thus, the function of the statute is to provide that the repayments shall have no effect on any taxable year other than the prior year or years in which payments were made or received under the subcontracts as initially priced.

### Conclusion

For the reasons stated, defendant's motion for summary judgment, which concedes that plaintiff is entitled to a refund of $30,662.45, plus statutory interest, is granted. Plaintiff's cross-motion for summary judgment is granted to the extent that judgment is hereby rendered in favor of plaintiff in the sum of $30,662.45, plus interest thereon as provided by law; in all other respects plaintiff's cross-motion for summary judgment is denied.

---

payor or the payee. Thus, the payor would not get a double benefit by way of utilizing the repayment as a deduction in the year of repayment, and the amount of the repayment could not be used to increase a net operating loss for the year.

*Similarly, the payee will not be subjected to double taxation for the year of the repayment."* [Emphasis added.] S.Rep. 1983, 85th Cong., 2d Sess. (1958) (1958–3 Cum.Bull. 1135.)